IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      **Plaintiff,**

v.                                                       19-CR-1631 KWR

**JOHNATHAN CRAFT, a.k.a.**
**"Jonathan Craft," a.k.a., "YN,"**
**a.k.a. "Wayan,"**

      **Defendant.**

## MOTION FOR SEVERANCE

Defendants Johnathan Craft, by and through his undersigned counsel, hereby submits his Motion for Severance. Mr. Craft submits that his right to a fair trial will be infringed if he is required to face trial with his co-Defendants. In further support of his motion, Mr. Craft states:

**I. PROCEDURAL BACKGROUND.**

1. On June 12, 2019, a federal grand jury indicted the Defendant Craft, along with multiple other persons, on four counts of sex trafficking, a violation of the travel act, maintaining a drug involved premises, conspiracy to commit money laundering, and other related crimes. The United States alleges that the Defendants participated in the ongoing use of the Best Choice Inn to facilitate and profit from sex trafficking and narcotic sales, while conspiring to launder the monetary proceeds therefrom.

2. On June 20, 2019, Defendant Craft was arraigned and had his detention hearing before the Honorable Jerry Ritter, United States Magistrate Judge. *See* Doc. 26. Mr. Craft pleaded not guilty to all charges. Judge Ritter ordered that Mr. Craft be detained. Mr. Craft has remained in custody throughout the proceedings of this case.

3. On July 29, 2019, the Court designated this case complex pursuant to 18 U.S. §3161(h)(7)(B)(ii). *See* Doc. 49.

4. Subsequently, on November 5 2019, a grand jury issued a Superseding Indictment adding multiple defendants and charging all named individual defendants with: (i) Conspiracy in violation of 18 U.S.C. § 1594(c); (ii) Sex trafficking by means of force or coercion in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1), aiding and abetting (18 U.S.C. § 2); (iii) Benefitting financially from a sex trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and (b)(1), aiding and abetting (18 U.S.C. § 2); (iv) Interstate and foreign travel and transportation in support of racketeering enterprises in violation of 18 U.S.C. §§ 1952 (a)(3)(A), aiding and abetting (18 U.S.C. § 2); (v) conspiracy in violation of 21 U.S.C. §846; (vi) Maintaining a drug involved premises in violation of 21 U.S.C. §856(a), aiding and abetting (18 U.S.C. § 2); (vii) Maintaining a drug-involved premises within 1,000 feet of a school in violation of 21 U.S.C. §860(a), aiding and abetting (18 U.S.C. § 2), and (viii) conspiracy in violation of 18 U.S.C. § 1956(h) (i.e., money laundering), aiding and abetting (18 U.S.C. § 2). Mr. Craft has pleaded not guilty to all charges set forth against him in the Superseding Indictment and is presumed innocent of those charges.

**II. THE COURT SHOULD SEVER MR. CRAFT'S TRIAL FROM THAT OF THE OTHER DEFENDANTS TO ASSURE THAT HE RECEIVES A FAIR AND CONSTITUTIONALLY ADEQUATE TRIAL.**

"[W]hen joinder of either defendants or offenses causes the actual or threatened deprivation of a fair trial, severance is no longer discretionary." *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974). Courts have long recognized that joint trials may be unduly prejudicial because the spillover of evidence of one or more co-defendant's wrongdoing will prejudice another defendant. *See United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965)(reversing a defendant's conviction, stating that severance should have been granted, and explaining: "[t]hat some of [the evidence regarding co-defendant's actions] rubbed off on [defendant] we cannot doubt."). The

"dangers of transference of guilt" are such that a court should use "every safeguard to individualize each defendant in his relation to this mass." *Kotteakos v. United States*, 328 U.S. 750, 773 (1946).

).

The court has designated this case complex—an action that Mr. Craft did not oppose. Nevertheless, when many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro v. United States*, 506 U.S. at 539. Justice Robert H. Jackson, in a concurring opinion, aptly pointed out:

> As a practical matter, the accused [in a conspiracy case] is often confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about, but which help to persuade the jury of existence of the conspiracy itself. In other words, a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed. The naïve assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction.

*Krulewitch v. United States*, 336 U.S. 440, 453 (1949)(Jackson, J., concurring).

Here, the United States alleges a scheme in which prostitutes were required to pay extra fees for their rooms at the Best Choice Inn for "dates" or face eviction and confiscation of their property. While the Government's allegations are large on conclusory statements that this scheme constituted "force" into "sex trafficking," they are concomitantly short are details of any acts of forcing any persons into prostitution. Whatever the merits of the United States' theory, there is no reasonable dispute that the non-corporate defendants in this case have drastically different roles with relation to the Best Choice Inn. Mr. Craft is alleged to have been employed lawfully as an employee of the Best Choice Inn. The discovery disclosed thus far furthers the idea that Mr. Craft was legitimately employed by the company. Evidence disclosed by the government demonstrates that Mr. Craft did not have duties related to the collection of money, bookkeeping, or finances of any kind. Yet he is accused of racketeering and money laundering. Evidence regarding financial improprieties by other defendants who had access to Best Choice Inn finances will spill over onto Mr. Craft and taint

3

his defense, even though the Government will have no evidence that Mr. Craft was involved in finances.

The discovery disclosed to Mr. Craft thus far is also bereft of evidence that he coerced, requested, or required any person to perform a commercial sex act. Tellingly, the government disclosed a cellphone record containing numerous text messages between Mr. Craft and an alleged prostitute. Despite cherry picking various highlights from that cell phone in its 26-page detention motion filed at the initiation of this case in June 2019, the United States failed to produce even one text message showing defendant trafficking any person at all, much less the owner of the cellular telephone. The government will surely wish to plug these gaping holes in its evidence by introducing 404(b) evidence against other defendants which can be used to paint, with a broad stroke, everyone in the case.

Under the above-circumstances, Mr. Craft's Fifth Amendment right to due process and his Sixth Amendment right to a fair trial will be violated if he is obligated to defend himself in a consolidated trial.

### III. THE DYNAMICS OF THIS CASE SUGGEST THAT THE GAINS WITH RESPECT TO JUDICIAL ECONOMY ARE STRONGLY OUTWEIGHED BY THE CONCERNS IMPACTING MR. CRAFT'S ACCESS TO A FAIR TRIAL.

Defendant recognizes that the Courts favor joinder where appropriate because it is economical and preserves judicial resources. Judicial economy must give way, however, if the prejudice to a defendant overrides whatever efficiency gains can be obtained by pursuing a single trial. *See United States v. Hutchinson*, 573 F.3d 1011, 1025 (10 Cir. 2009). After all, the price of judicial economy should not be the abrogation of an accused individual's constitutional rights. The paramount purpose of the courts in criminal cases is not the preservation of judicial resources, even if such preservation is a non-trivial concern. The list of accused persons includes an owner, a local manager, a "security" worker (this is how Mr. Craft's role has been described), and residents of the

Best Choice Inn. The disparate roles these individuals played means that significant evidence related to each defendant will be unique. Such a situation enhances the potential "spillover" effect, exposing Mr. Craft to condemnation for acts in which he did not participate and did not condone. Additionally, such unique evidence for each defendant undercuts the expected efficiency gains that the government might seek in a consolidated trial.

The government will likely express the challenge of putting alleged victims on the stand more than once. The likelihood of confusion, combined with the improper prejudice that a consolidated trial will cause, substantially outweigh such concerns. In short, it is not a severe hardship to try Defendant separately. To the extent it is inconvenient, such inconvenience is warranted given the prejudice Plaintiff will face if his case is not severed and his speedy trial rights are not honored.

IV. CONCLUSION.

While Rue 14 permits the joinder of multiple defendants, constitutional concerns require severance in this case. Mr. Craft should not be tried in a consolidated trial with the other defendants. Rather, he should have a separate trial that protects his constitutional rights to due process and to a fair trial.

WHEREFORE, Defendant Jonathan Craft respectfully requests that the Court sever his case and that his trial be held separately from that of the other defendants.

Respectfully Submitted,

LAW OFFICES OF MARSHALL J. RAY, LLC

/s/ *Marshall J. Ray*
Marshall J. Ray
201 Twelfth St. NW
Albuquerque, NM 87102
(505) 312-7598

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 28th day of August 2020, I filed the foregoing pleading via CM-ECF, causing all registered parties to be served.

/s/ *Marshall J. Ray*
Marshall J. Ray