# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA

        Plaintiff,

   vs.                                 Case No. 1:19-CR-01631 KWR

KAMAL BHULA, JOHNATHAN CRAFT,
WILLIE HORTON, EDDIE HILL,
PRAGNESHKUMAR PATEL,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court following a *James* hearing held on June 28, 2021, and September 9, 2021.  The Court took this matter under advisement following the hearing on September 9, 2021.  Having reviewed the pleadings, the Court finds that the Government's Motion to Introduce Co-conspirator Statements **(Doc. 134)** is well-taken, and therefore, **GRANTED IN PART**.  The Court finds that the Defendant Patel's motion to exclude co-conspirator statements and for Pre-trial hearing **(Doc. 151)** is not well-taken, and therefore, is **DENIED IN PART.**

## BACKGROUND

A grand jury charged Defendants in a ten-count superseding indictment with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c), four substantive counts of sex trafficking in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) and 1591(a)(2) and (b)(1), interstate and foreign travel and transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952(a)(3)(A), conspiracy in violation of 21 U.S.C. § 846, maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a), maintaining a drug-involved premises within 1,000 feet of a

school in violation of 21 U.S.C. § 860(a); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  Doc. 67 ("Superseding Indictment").  The substantive counts also allege aiding and abetting in violation of 18 U.S.C. § 2.  *Id*.

The Government asserts that the Defendants conspired to coerce women to engage in commercial sex acts.  18 U.S.C. §§ 1591(a).  As part of the conspiracy, the defendants allegedly charged the women fees for their "dates" or visitors, and withheld their rooms and drugs until they paid the fees for their "dates."

The Government moved to admit 11 categories of co-conspirator statements.  The Defendants filed written objection, mostly focusing on whether a conspiracy existed and whether the individual defendants were part of that conspiracy.

The written objections were as follows.  Mr. Patel did not have any objections to the admission of any specific statements, but rather asserted that (1) no conspiracy existed and (2) he was not the part of any conspiracy if it did exist.  Mr. Bhula and Mr. Craft contested whether a conspiracy existed.  They also objected to the admission of some of the specific statements, which the Court addresses below.  Mr. Craft requested additional clarity on the specific statements the Government would seek to admit at trial.  Mr. Craft also requested that the full context for the statements be provided.

On May 24, 2021, the Court directed the Government to produce the particular statements it would seek to admit in categories 9 and 10, and provide explanations for why each statement was admissible.  **Doc. 200.**  These were the only categories in which the government had not already provided specific statements they sought to introduce into evidence. The Government produced those statements in a 31 page supplement and explained why they were admissible.  **Doc. 201.**  No written objections were filed contesting the admissibility of the specific statements.  At

the September 9, 2021 hearing, Mr. Craft requested that the Court direct the government to issue the same order for all 11 categories of statements. The Court finds this unnecessary, as the Government adequately set out the proposed statements for admission and explained why they are admissible.

The Court set the Government's motion for an evidentiary *James* hearing. At the June 28, 2021 hearing the Court issued the following oral ruling, finding that a conspiracy existed and the defendants were part of that conspiracy:

> THE COURT: Thank you. The threshold question the Court has to determine by a preponderance of the evidence is whether the United States has proven that a conspiracy existed; and if that is proven, who was involved in the conspiracy. Counsel for the defense, all of you certainly argue that the second prong of the statute, that there was no threats of force, fraud, or coercion that were used.
>
> First of all, let me say that coercion does not have to be an overt act. It can be a condition of a system or a structure set up that, through the debt bondage and through the drugs, creates more of a subtle or subjective type of coercion. Nonetheless, it's coercion that forces these women into a vicious cycle that they cannot extricate themselves from. Certainly, a certain type of person is maybe knowingly recruited, maybe enticed, certainly harbored, under the facts that were presented today before the Court, and maintained, along with transport provided or obtained, as required by the statute.
>
> I am going to find by a preponderance of the evidence, based on what we heard today in court, and regardless of the probable cause determination to bind over as to each of these four clients, Mr. Craft, Mr. Hill, Mr. Bhula, and Mr. Patel.
>
> There was the testimony and there was admission, the plea of Willie Horton, to a conspiracy with these other four defendants that we are talking about today. Mr. Horton, in his statements, implicated all of them, no matter what their level, whether their level of participation was large or small.
>
> Not only do we have the plea of Mr. Horton and his statements implicating them all, we also have statements of Jane Does 1, 2, and 3 that corroborated all or portions of the statements given by Mr. Horton. We also have comments from others, including hotel records and phone records and e-mails – text messages, not e-mails -- text messages that corroborate different portions of the statements of Mr. Horton.
>
> That being said, the Court has found probable cause that a conspiracy exists.

**Doc. 209 at 248-249.**  The Court found that a conspiracy existed and the defendants were part of that conspiracy.  *Id.*

On September 9, 2021, the Court held oral argument on the remaining issue, whether the specific statements were admissible as co-conspirator statements in furtherance of the conspiracy, or whether they were admissible on another basis.  Following oral argument, the Court took this matter under advisement.

At oral argument, Defendant Patel conceded that the proposed statements were admissible after the Court found that a conspiracy existed. **Doc. 209 at 251-252.**  Defendant Bhula noted that a large number of statements were allegedly his own statements.  Defendant Bhula did not object to his own statements or business records coming in.  **Doc. 209 at 252.**  At the hearing, Mr. Bhula acknowledged that many of these objections were based on the contention that no conspiracy existed.  Mr. Bhula did not object to the introduction of his own statements if proper foundation was laid at trial. Moreover, Mr. Bhula acknowledged that some of his objections were addressed by the supplemental briefing ordered by the Court, in which the Court directed the Government to give specific statements.

At oral argument, Mr. Hill requested that the Court not allow in the co-conspirator statements until a conspiracy is established at trial.  Mr. Hill also noted that many of the documents are arguably admissible as business records, and should therefore not be admitted as co-conspirator statements.

Mr. Patel filed his own Motion for Limitation of Alleged Co-conspirator Statements and for Pre-trial Hearing on their Admissibility (**Doc. 151**).  This motion appears to be in the nature of a response or objection to the Government's motion to introduce co-conspirator statements.  Mr. Patel largely argued that no conspiracy exited or alternatively he was not part of any conspiracy.

The Court therefore finds this motion is ready for ruling following the September 9, 2021 hearing.

## LEGAL STANDARD

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). "But testimony not offered to prove the matter asserted that is 'offered instead for *relevant* context or background' is not hearsay." *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (unpublished opinion) (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009) ). Questions and comments do not constitute hearsay if they are not offered to prove the truth of the matter but are offered to show their effect on the other person in the conversation and provide context. *See United States v. Smalls*, 605 F.3d 765, 785 n. 18 (10th Cir. 2010).

Although hearsay statements are generally not admissible at trial, *see* Fed. R. Evid. 802, a statement that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay, and therefore may be admissible.   Fed. R. Evid. 801(d)(2)(E). For a statement to be non-hearsay under Rule 801(d)(2)(E), the district court must first find the following elements by a preponderance of the evidence: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy. *United States v. Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013). The elements of conspiracy, in turn, are: (1) there was an agreement to violate the law; (2) the declarant knew the essential objective of the conspiracy; (3) the declarant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent. *Id.* at 1249 (citing *United States v. Ailsworth*, 138 F.3d 843, 850-51 (10th Cir. 1998) ). The government, as

the proponent of the evidence, has the burden of proving the relevant preliminary facts. *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993).

The government does not have to prove an express or formal agreement was made; rather, it merely has to show the coconspirators tacitly came to a mutual understanding. *Rutland*, 705 F.3d at 1250. "The existence of a conspiracy may be inferred from circumstantial evidence." *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987). Interdependence means the coconspirators were united in a common goal or purpose. *Ailsworth*, 138 F.3d at 851. The trial witness need not be a co-conspirator, so long as the declarant is a co-conspirator with the defendant against whom the statement is being offered. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) ("in deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and not on whether the statements were 'made to' a member of the conspiracy"). One cannot conspire solely with government informants or agents. *United States v. Wells*, 739 F.3d 511, 528 (10th Cir. 2014).

When making a determination under Rule 801(d)(2)(E), the court "may consider both independent evidence and the statements themselves." *Rutland*, 705 F.3d at 1248. To satisfy Rule 801(d)(2)(E), the United States need show only that there is "some independent evidence linking the defendant to the conspiracy." *Martinez*, 825 F.2d at 1453 (relying on *Bourjaily v. United States*, 483 U.S. 171 (1987) ). "[S]uch independent evidence may be sufficient even it is not 'substantial.' " *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) (quoting *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) ). Independent evidence is any "evidence other than the proffered [coconspirator] statements themselves," and may include "an out-of-court statement by

6

a coconspirator to a government agent during an investigation." *Owens*, 70 F.3d at 1125 (quoting *Martinez*, 825 F.2d at 1451).

With regard to the third element under Rule 801(d)(2)(E), "in furtherance" means that the statements are "intended to promote the conspiratorial objectives." *Rutland*, 705 F.3d at 1252 (quoting *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) ). Examples of statements the Tenth Circuit has held to be in furtherance of a conspiracy include statements explaining events of importance to the conspiracy, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, statements identifying a fellow coconspirator, and discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members. *Id.* (internal quotations and citations omitted). Additionally, statements identifying members of a conspiracy, discussing particular roles of other coconspirators, and avoiding detection by law enforcement personnel are made "in furtherance of" a conspiracy. *Williamson*, 53 F.3d at 1520. "A coconspirator statement is made during the course of the conspiracy it if is made before the objectives of the conspiracy have either failed or been achieved." *Owens*, 70 F.3d at 1126 (quoting *Perez*, 989 F.2d at 1579). "[P]revious statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991).

Rule 801(d)(2)(E) requires the trial court to make findings on the record regarding the required elements before admitting coconspirator's out of court statements. *See Perez*, 989 F.2d at 1581. The "strongly preferred order of proof" in determining the admissibility of an alleged coconspirator's statement is to first hold a hearing outside the presence of the jury to determine whether the party offering the statements has established the existence of a conspiracy by a

preponderance of the evidence. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). At the hearing, the district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Owens*, 70 F.3d at 1124.

It is, however, permissible for a court provisionally to allow in the evidence with the understanding that the offering party will present evidence during the course of trial that will prove the existence of the predicate conspiracy. *Rutland*, 705 F.3d at 1248 n.3 (explaining that it was permissible for trial court to admit coconspirator statements provisionally, conditioning admission on government's promise to develop proof of conspiracy through later testimony, but noting Tenth Circuit has repeatedly mentioned its strong preference for *James* proceedings); *Owens*, 70 F.3d at 1123 (explaining that district court may make findings under Rule 801(d)(2)(E) either by holding *James* hearing outside presence of jury or may provisionally admit evidence with caveat that evidence must "connect" up during trial).

## DISCUSSION

The Government moved to admit certain statements by co-conspirators and certain documents. The Government asserts that the statements are admissible because they (1) are not hearsay, (2) are co-conspirator statements under Fed. R. Evid. 801(d)(2)(E), or alternatively (3) are business records.

Under Fed. R. Evid. 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the

course of and in furtherance of the conspiracy." *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999).

As noted above, at a prior hearing the Court concluded that (1) a conspiracy existed and (2) the Defendants were members of that conspiracy. At issue here is whether the (3) specific statements were made in the course of and in furtherance of the conspiracy pursuant to Fed. R. Evid. 801(d)(2)(E), or whether the statements are admissible under another theory.

The Defendants' objections largely focused on (1) whether a conspiracy existed or (2) whether they were part of the conspiracy. The Defendants' objected to some statements, as explained below. The Court finds that many of the statements discussed below are admissible because they are (1) not for the truth of the matter asserted and not hearsay; are (2) co-conspirator statements FRE 801(d)(2)(E), or (3) are business records excepted from hearsay rules.

## I.    Category I: Mr. Bhula's statements regarding Jane Doe's rent fees.

The Government sought to introduce statements by Mr. Bhula to an undercover officer ("UC"). These statements generally addressed Jane Doe 1's rent fees.

The Government asserted that it would seek to introduce the following. First, on **August 18, 2018**, after being introduced to Mr. Bhula by Jane Doe 1, the UC informed Mr. Bhula that he would cover Jane Doe 1's expenses:

- Mr. Bhula told the UC that Jane Doe owed approximately $81. The UC paid Bhula $100.

Second, **on August 31, 2018**, the UC contacted Mr. Bhula in order to again pay Jane Doe 1's fees:

- **Mr. Bhula stated** that Jane Doe 1 owed $104 because she had accumulated late charges on her account.
- The UC told Bhula (1) he knew that they charged a per visitor fee and (2) stated "I don't want her to get charged for me coming to see her, I mean I know her other guys, she's gotta pay for that. But we're kind of like business partners, and so I'm here for that, so I don't want her to get docked."

- **Mr. Bhula** (1) wrote the UC's name on Jane Doe 1's room ledger, (2) told the UC he would not charge Jane Doe 1 for the UC's visits, and (3) that rent was due every day at 11AM.
- The UC the asked whether rent would change if Jane Doe 1 had "dates" prior to 12 AM: "If she has a date before 12, does that add onto it, like if she has someone see her before that? Is it—should I tell her to chill out?"
- **Bhula responded** that if visitors were in her room for an extended period of time she would likely be charged, but that he and the staff don't always know when she has visitors, and she is charged only if management sees it.

Third, on **September 12, 2018**, the UC again inquired about Jane Doe 1's rent:

- **Bhula stated** that she owed $102.
- The UC paid Bhula $150.00 for Jane Doe 1's rent.
- **Bhula then stated** the Jane Doe 1 would owe $13.50 for the following day, due by noon.
- **Bhula also stated,** "we try to help the girls," and that short or unobserved visits were not assessed a fee.
- **Bhula then clarified** that if someone visits the room for an extended period, such as an hour or two, then the girl would be charged.
- The UC then said, "and then that's, she told me its ten bucks then?"
- **Bhula confirmed** it was $10.00.

*See* **Doc. 134 at 11–13**.

Mr. Craft objects, asserting that the Court should not allow in statements by Jane Doe 1 and the UC, who are not co-conspirators. The Government asserts that it is proffering Defendant Bhula's statements as co-conspirator or conversations with Mr. Bhula and is not proffering statements between Jane Doe 1 and the UC. **Doc. 153 at 5.**

Mr. Craft appears to assert that these statements were not related to the conspiracy, because they merely address rent. **Doc. 150 at 10.**

The Court finds that Mr. Bhula's statements were made in the course of and in furtherance of the conspiracy, as they are statements which facilitated the conspiracy by collecting proceeds of the alleged illegal activity.

Statements made by non-conspirators, such as the UC, Jane Doe 1, Jane Doe 2, A.L., and B.L. may be admissible to provide context to the co-conspirator statements, and may not be for

the truth of the matter asserted. *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) ("testimony not offered to prove the matter asserted that is "offered instead for *relevant* context or background" is not hearsay.), *citing United States v. Hinson,* 585 F.3d 1328, 1336 (10th Cir.2009). For example, a UC's question may provide necessary context for an admitted statement by a co-conspirator. "'One useful clue' in distinguishing hearsay from permissible background information is 'whether the purported background evidence is necessary for the government to be able to tell a coherent story about its investigation.'" *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009); *see also United States v. Hendricks*, 395 F.3d 173, 718-19 (3d Cir. 2005) ("We thus hold that if a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context."); *United States v. Gajo*, 290 F.3d 922, 930 (7th Cir.2002) ("statements are not hearsay to the extent they are offered for context and not for the truth of the matter asserted"); *United States v. Ellis*, 2013 WL 2285457 at * 2 (E.D. Mich. May 23, 2013) (unpublished) (incoming text messages "in the form of questions and commands are not statements because they do not contain an assertion and, therefore, are not inadmissible hearsay"); *United States v. Ailsworth*, 948 F.Supp. 1485, 1490 (D. Kan. Nov. 18, 1996) (statements of confidential informant captured on audiotape and videotape offered only for context for statements of defendant and his coconspirators were not hearsay as they were not offered for truth of the matter asserted).

II.   **Category II:  Statements by Bhula and Craft to the UC regarding management structure and payments.**

On March 4, 2019, the UC rented a room at the Best Choice Inn.  The UC attempted to rent a specific room for one week.  Due to the Best Choice Inn's policy against long term rentals, the employee on duty told the UC to speak with Mr. Bhula, who would not be at the Hotel until the following day.  On March 5, 2019, the UC spoke with Mr. Bhula:

- **Bhula told** the UC that when he was not at the Best Choice, "YN" was in charge. "YN" is the alias of co-defendant Jonathan Craft.
- **Bhula also told** the UC that the person working the front desk the day prior, who he rented the room from, subsequently told Bhula that the UC was an "undercover cop."
- **Bhula and the UC laughed about it**

Later that day, the UC asked if he could rent room #204 for additional days:

- **Bhula stated** that he did not normally rent rooms #201-#207 for extended periods because he wanted to keep the "riff-raff" away from the office.
- **Bhula agreed** to rent #204 to the UC until the coming Saturday.

The UC paid an additional $124.00 to cover the additional time.  The UC then asked Bhula how to get a hold of Craft if Bhula was not around. The UC mentioned to Bhula that he had another business partner (UC2) who would be coming to see him:

- **Bhula stated** that Craft was on his way**.  Bhula called** Craft into the office, and introduced him to the UC.
- **Craft stated** he was the night manager.
- The UC told both Bhula and Craft that he (the UC) was expecting several visitors.
- **Craft pointed** to a sign taped to the office window that explained that each visitor would incur an additional charge.
- **Craft explained** that if the UC paid $20.00 right then, he would not bother him about visitors for the rest of the day.
- The UC attempted to hand Craft a $20 bill
- **Craft pointed** to Bhula and said, "give it to him and everything is A-ok."
- The UC confirmed, that the additional $20 was "for visitors and stuff."
- **Craft responded** with, "right."

The UC2 arrived at the Best Choice Inn and joined the UC, Bhula, and Craft in the office:

- **Craft stated** he was the "night manager" and was responsible for the Best Choice Inn when Bhula was gone.

12

- **Craft stated** he could be reached by dialing 112.
- **Craft further stated** that he was always present at the Best Choice and it was his responsibility to keep order and monitor activities at the hotel.

*See* **Doc**. **134 at 13–15**.

These statements are admissible for several reasons. First, "statements identifying members of a conspiracy are statements in furtherance of a conspiracy, as are statements discussing the particular roles of other coconspirators." *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995) (internal citations and quotations omitted). Second, the statements directly lead to the collection of a fee. Finally, the Government gives sufficient context for these statements, thus the Court finds by a preponderance of the evidence that it was made in the course of and in furtherance of the conspiracy.

Mr. Bhula argues that some statements by the UC are in narrative form and inadmissible hearsay. The Court disagrees, and concludes they are admissible non-hearsay for context and background and were not for the truth of the matter asserted.

## III.   Category III: Mr. Bhula allowed UC, UC2, and others to conduct business in the hotel.

On March 5, 2019, UC and UC2 conducted a drug deal in the office of the Best Choice Inn, in front of Mr. Bhula. The UC took out a plastic bag containing apparent cocaine in Mr. Bhula's presence and examined the different bundles. After placing the apparent cocaine into a paper bag, the UC spoke to Bhula to confirm that UC2 could be there:

- The UC said to Bhula, "so if he (UC2) has any problems, he comes and sees you?"
- **Bhula replied** in the affirmative.
- The UC stated, "Everything good? He knows YN now?"
- **Bhula replied** in the affirmative.

At some point during this interaction, the UC handed UC2 $2,500, also in plain view of Mr. Bhula.

After UC2 left:

- the UC told Bhula that he would be having visitors so he could, "get rid of this stuff," referencing the bag of drugs he had appeared to have purchased in the office of the Best Choice.
- **Bhula acknowledged** the UC's plans with no objection.

On March 8, 2019, the UC had another interaction with Bhula. The UC asked Bhula if a girl could use the room when he was not present:

- The UC stated, "If I'm not in my room, can I let someone else use my room if I square up with you? It's a girl, she's good … But how would I make it good with you?"
- **Bhula stated** that she could, as long as Bhula knew who she was and had her name on the UC's ledger.
- The UC stated the girl would likely have several visitors and would be "taking care of business." The UC then asked Bhula if the UC could pay her visitor fees.
- **Bhula said "yes."**
- The UC asked Rocky if "YN" (Craft) kept track of visitor fees.
- **Bhula said, "yes."**
- The UC then stated, "I'll let you know before that would happen, and I'll let him know too. Because I don't want to be on a bad side with you guys… I wanted to make sure that that was cool…I thought that would be a good way to let her take care of some of her problems, but I didn't want to do anything until I talked to you and to YN and make sure everybody was cool. She's a nice girl, real quiet, not gonna be a problem, because I know you don't like the riff-raff upstairs."
- **Bhula agreed** to allow this proposed arrangement to happen.

*See* **Doc. 134 at 15–16.**

Mr. Bhula argues that the drug "ruse far exceeds the bounds of what is appropriate under Fed. Rule 801(d)(2)(E)." Bhula Resp. 9. Specifically, he alleges that there "is no evidence that [he] saw this fake drug deal or that if he did see it, that he understood what was occurring." *Id*. For his part, Mr. Craft argues that Mr. Bhula's actions are not an adoption of the UC's statements/actions. Craft Resp. 11.

The Court disagrees with Defendants. With respect to the ruse drug transaction, the UC recorded the interaction. If Mr. Bhula saw the deal go down, his approval is admissible as a

coconspirator statement.  Clearly, the Government gives sufficient context for these statements, thus the Court can determine by a preponderance of the evidence that it was made in the course of and in furtherance of the conspiracy.  Furthermore, the UC's statements are admissible non-hearsay because they are  not being introduced for the truth of the matter asserted. These statements are being introduced to show context for the conversation and Mr. Bhula's knowledge of what occurred in the hotel.  Moreover, if the undercover officers testify at trial, the tape-recorded conversation is not problematic because they would be available for cross-examination.  *See United States v. Townley*, 472 F.3d 1267, 1274 (10th Cir. 2007).

Defendants appear to assert that Mr. Bhula did not say anything in the March 8, 2019 conversation.  The UC may testify as to what he heard Mr. Bhula say, and the Government represents it will provide the audio recording for the jury to consider.

## IV.    **Category IV: Mr Bhula's statements to A.L. about the online reviews and the rent fees**.

The Government asserts it intends to put forth evidence that Bhula expressed concern over the online reviews of the Best Choice Inn to A.L, which generally were negative and indicated that the hotel was a destination for drugs and commercial sex transactions:

- **Bhula asked** A.L if he/she would write a good review for the hotel.
- **A.L. instead suggested** that the hotel management stop charging fees and just refuse to allow visitors.
- **Bhula told** her that he did not want to do that and would continue to allow the visitors and charge fees.

*See* **Doc. 134 at 16–17**.  Mr. Craft objects, asserting that this statement does not further the conspiracy and is irrelevant.

The government asserts that Mr. Bhula's statement is admissible because it suggests Mr. Bhula was attempting to conceal the conspiracy.  Online users including law enforcement could

see the reviews, which then could lead to an investigation.  *See United States v. Alcorta,* 853 F.3d 1123, 1139 (10th Cir. 2017) ("When a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy." (citation omitted)); *see also United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception.").  The Court therefore finds that this statement is in the course of and in furtherance of the conspiracy.

A.L was an employee of Best Choice Inn.  A.L.'s statements are not offered for the truth of the matter asserted, but to show Mr. Bhula's knowledge of the prostitution and drug dealing and intent to conceal the conspiracy.  Alternatively, A.L.'s statement is not hearsay and is necessary to provide context to Mr. Bhula's statement.

V.     **Category V: Mr. Bhula's Statement to B.L. that he was worried he could get in trouble by allowing victims to work out of his hotel.**

B.L. lived periodically at the Best Choice Inn.  Defendants charged her $69 a night, or $240 a week to stay at the hotel.  Defendants assessed a $10 fee for every visitor that she had to her room who stayed longer than ten minutes.  The Government offers the following statement:

- **Bhula told** B.L. that he was worried that he could get in trouble for allowing the sex workers to work out of the Best Choice Inn.

*See* **Doc. 134 at 17**. Mr. Craft objects, asserting that it does not further the conspiracy.  The Court disagrees.

As noted above, Bhula's statement furthers the conspiracy because it implicitly conveys to B.L. that she needs to keep quiet about the prostitution, therefore protecting the integrity of Defendants' scheme.  *See Alcorta*, 853 F.3d at 1139 ("When a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the

16

conspiracy." (citation omitted)); *see also Wolf*, 839 F.2d at 1393 ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception."). Therefore, this statement was made in the course of and in furtherance of the conspiracy.

**VI.**   **Category VI: Mr. Horton's and Mr. Craft's text messages to Jane Doe 1 and Jane Doe 2.**

Under category six, the Government seeks to admit numerous text messages from Mr. Craft and Mr. Horton to Jane Does 1 and 2. **Doc. 134 at 17-28.** The Government explained why each statement was in the course of and in furtherance of the conspiracy. *Id.*

The Court has reviewed each statement text message provided by the Government. **Doc. 134 at 17-28.** Mr. Bhula asserts that he was not aware of what was happening between Jane Does and his co-defendants. As noted above, however, the Court has found that a conspiracy existed and Mr. Bhula was part of the conspiracy. Mr. Craft asserts that the text messages were not in furtherance of the conspiracy.

In some of the text messages, a defendant told a victim that she could not go back into her room because she owed fees for visitors, or "dates". This furthers the conspiracy because it communicates to the victim the consequences of not paying her fees and causes her to engage in additional commercial sex acts to pay the owed fees. In some text messages, Defendants facilitated the victims' access to narcotics. In some statements, a defendant stated how much a victim owed. These statements included agreements to provide transportation or facilitate commercial sex acts. They also included statements in which a victim said she was locked out of her room or was sick from withdrawal. In response, Mr. Craft allegedly told her that she could not get back into her room without paying her fees. Some text messages show a romantic relationship with the victims,

which goes to the Defendants' maintenance of the victims.    The text messages demonstrate an intent to obtain fees and sell drugs and provide a live look into the day to day operation of the conspiracy.

The Court has reviewed each text message, **Doc. 134 at 17-28**, and finds by a preponderance of the evidence that the text messages were made in in the course of and in furtherance of the conspiracy and are therefore admissible under FRE 801(d)(2)(E).

Moreover, to the extent the Government still seeks to admit Mr. Horton's text messages, those text messages are admissible as co-conspirator statements.  He was clearly a co-conspirator, as shown by the evidence presented at the June 28, 2021 hearing and his factual plea admission.

To the extent the Government offers the non-conspirator portion of the conversations, those may be admissible.  The questions and statements by Jane Doe 1 and 2 are necessary to provide context to the admitted co-conspirator statements and are not offered for the truth of the matter asserted.

**VII.**  **Category VII: Statements to the victims about how much money they needed to pay to get back in to their rooms.**

The Government seeks to admit statements regarding how much money the victims had to pay to get back in to their rooms. The co-conspirators allegedly charged fees for visitors to the rooms of Jane Doe 1 and Jane Doe 2.  As noted above, some of the co-conspirators actively facilitated the victims' "dates", monitored their "dates," and charged fees based on the number of "dates."  The Court notes that statements between a victim and an undercover officer are not admissible under FRE 801(d)(2)(E).  *See* **Doc. 134 at 28**.  However, statements by a co-conspirator to a victim regarding how much money the victims owe to get back into their rooms are in the course of and in furtherance of a conspiracy and are admissible co-conspirator statements.

**VIII.**  **Category VIII: Orders to the victims that they were not allowed to take narcotics off the premises, and were required to limit outcalls during the state police saturation in May 2019**

The Government plans to introduce testimony that Defendants Horton and Craft advised the victims to (1) not take drugs off the premises and (2) do "in calls" rather than "out calls." **Doc. 134 at 28–29; Doc. 153 at 12**. These statements were allegedly in response to a law enforcement saturation event that occurred during 2019.  *Id.*  As stated above, statements made to conceal a conspiracy are made in furtherance of that conspiracy. *See Alcorta,* 853 F.3d at 1139 ("When a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy." (citation omitted)); *see also Wolf*, 839 F.2d at 1393 ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception.").  The Court agrees that the defendants' statements are in the course of and in furtherance of the conspiracy, and admissible under Fed. R. Evid. 801(d)(2)(E).

**IX.**  **Category IX: Business Records.**

The Government asserted that it intended to introduce business records, which show how the business was run and how visitor fees were levied.  The Government also possessed lease documents, mortgage records, and documentation regarding the purchase of the hotel by Mr. Patel and the subsequent lease to Mr. Bhula.  **Doc. 134 at 29.**

Because the Government did not initially identify these records, the Court directed the Government to identify these documents, provide them, and explain their admissibility.  **Doc. 200.** The Government produced a supplement with the documents attached and explained why the documents are admissible. *See* **Doc. 201 at 32**.  The Government asserted that these records were

admissible as business records under FRE 803(6), as co-conspirator statements pursuant to FRE 801(D)(2)(E), or alternatively under the scope of agency exception pursuant to FRE 801(d)(2)(D).

The Court notes that no defendant objected to the supplement, and no Defendant asserted that a specific business record was inadmissible.  The parties do not appear to dispute that these documents are admissible as business records.  Therefore, the Court finds the business records admissible under the business record exception.

Alternatively, they are admissible as co-conspirator statements.  These documents contain Best Choice Inn branded room balance sheets featuring the room number, renter name, date and amounts owed and paid.  The records also include the related sheet stubs that correspond to the room folders, a sample weekly rate sheet on Best Choice Inn stationary, daily record sheets tracking visitors and extra fees, signed visitor policy signs, and sheets maintaining a record of the total number of fees levied against tenants for visitors featuring the names of co-conspirators and commentary.  *See* **Doc. 201,** Suppl., Exs. B–G.  In totality, these documents furthered the efficiency and profitability of the conspiracy.  Thus, they are admissible under Fed. R. Evid. 801(d)(2)(E) because they are made in the course of and in furtherance of the conspiracy.

**X.**    **Statements found in the co-defendants' phones that were made to further the conspiracy.**

The Government asserted that it intended to introduce any statement in any phone belonging to the defendants that furthered the conspiracy. As above, the Court directed the Government to produce each statement it intends to introduce at trial and state why that statement was admissible.  **Doc. 200.**

The Government filed a supplement complying with the Court's order.  It identified the text messages it intends to introduce and explained why each statement was in the course of or in furtherance of the conspiracy.  **Doc. 201.**

None of the Defendants objected to the Government's supplement.  Although Mr. Patel stated he was not part of the conspiracy, **Doc. 204,** none of the other Defendants filed an objection or stated why the specific statements text messages by the Defendants were not admissible as co-conspirator statements.  Therefore, these statements in the Government's supplement **(Doc. 201)** appear to be admissible without objection.

Alternatively, the Court finds that the co-conspirator statements in the text messages were made in the course of and in furtherance of the conspiracy.   **Doc. 201.**  The Court has read each text message and statement.  *Id.*  The Government set forth each text message and its context. It has also explained why each statement is admissible. *Id*. The Court need not repeat the Government's well-reasoned and well-supported arguments, especially when the Defendants do not object or point out any specific reasons why the statements should not be admitted.  The text messages demonstrate an intent to obtain fees.  They also were made to facilitate the day to day operations of the conspiracy, and were made in an effort to conceal the conspiracy.  In some text messages, the co-conspirators talked about securing drugs for the addicted victims to maintain their dependence on the co-conspirators.  Some text messages also addressed locking them out of the room, forcing them to engage in sex acts to obtain the fees to access their room.  Text messages about apparent romantic interests between co-conspirators and victims may be relevant to how they maintained and recruited the victims.  Therefore, the Court finds by a preponderance of the evidence that the text messages were made in the course of and in furtherance of the conspiracy and are therefore admissible under FRE 801(d)(2)(E).

At oral argument, Mr. Hill argued that two statements were arguably not in furtherance of the conspiracy. *See* **Doc. 201 at 11, 12**. Those statements regarded whether Mr. Hill was available to work that day. The Court finds that those statements were in furtherance of the conspiracy.

The Government also seeks to introduce statements by A.L, an apparent member of the conspiracy. A.L. was an employee of the hotel. **Doc. 209 at 45.** At the direction of co-conspirators and as part of the conspiracy, A.L. apparently monitored fees and fines, which furthered the interest of the conspiracy. **Doc. 201 at 29**. Moreover, she apparently seized items from a victim's room, so that they could be resold to the victims. This served to both coerce the victims into sex trafficking and furthered the financial goal of the conspiracy. Therefore, A.L. was a member of the conspiracy and her text messages furthered the conspiracy. Alternatively, her statements are admissible for necessary context to the admitted co-conspirator statements and are not offered for the truth of the matter asserted.

The Government requests that the Court admit the non-conspirator part of the conversations listed in **Doc. 201** which accompany the co-conspirator statements. **Doc. 201 at 1.** Defendants did not object. Generally, questions or comments made by others in a conversation with a co-conspirator may be admissible where they are not provided for the truth of the matter asserted and provide context to understand a co-conspirator's statement. *Becknell*, 601 F. App'x at 712 (" 'One useful clue' in distinguishing hearsay from permissible background information is 'whether the purported background evidence is necessary for the government to be able to tell a coherent story about its investigation.' "); *See Cesareo-Ayala*, 576 F.3d at 1129 (finding that statements that "may well support an assertion of the prosecution" are not hearsay under Rule 801(c) because they were not admitted for their truth, but rather to establish that a business relationship existed between the declarants and to put the defendant's statements in context).

Orders and questions are not hearsay because they are not offered for the truth of the matter asserted. The non-conspirator portion of a conversation with a co-conspirator is not hearsay as it is not offered for the truth of the statement or question, but instead to make a co-conspirator's statements intelligible.  Such statements are offered for their effect and to provide context.  *United States v. Smalls*, 605 F.3d 765 (10th Cir. 2010).

The Defendants did not respond to say which statements by non-conspirators are inadmissible hearsay.  Therefore, the Court concludes that where the Court admits co-conspirator statements in **Doc. 201**, the accompanying conversation is also admissible as the non-conspirator statements or questions are (1) not assertions, (2) not for the truth for the matter asserted and instead are (3) offered for necessary context.

## XI.    Category XI: Mr. Patel's statements that the Best Choice Inn was a business, and he didn't care what people did there as long as they paid him.

The Government asserts it will introduce evidence that, when confronted by an employee about the drug use and prostitution at the Best Choice Inn, Defendant Patel responded that he did not care what the victims did as long as they paid him.  **Doc. 134 at 30**.  The Government plans to introduce evidence to provide context, including testimony that Defendant Patel managed the hotel in the same manner as Mr. Bhula prior to Mr. Bhula taking over.  This comment is made in furtherance of the conspiracy, because it attempts to conceal the conspiracy.

Co-conspirator statements made before a defendant joins the conspiracy are admissible. *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991).

Mr. Craft asserts that the conspiracy did not exist at the time the statement was made.  The government represents that the conspiracy began in September or October 2017 when Mr. Patel purchased the hotel.  The Government represents that this comment was made sometime when Mr.

Patel was on site directly running the hotel, between September 2017 to March 2018.  During that time, he was training Mr. Bhula, and Mr. Bhula was in contact with Mr. Horton.  The Government represents it will present evidence that Mr. Patel ran the hotel in the same manner as Mr. Bhula. He observed when the sex trafficking victims had "dates" and assessed a $10 fee per "date."  When they could not pay the fees, he locked them out of their rooms.  Therefore, the Court finds Mr. Craft's objection not well taken.

## XII.   Defendant Patel's motion for limitation of alleged co-conspirator statements (Doc. 151).

Defendant Patel filed a motion for limitation of alleged co-conspirators statements.  **Doc. 151.**  This motion was in the nature of a response to the Government's motion to admit co-conspirator statements.  Mr. Patel requested a pretrial hearing, asserted that no conspiracy existed, and asserted that he was not a member of any conspiracy.

The Court held a pretrial hearing as requested by Mr. Patel.  Based on the record created at the hearing on June 28, 2021, and the Court's oral ruling at the hearing that (1) a conspiracy existed and (2) the defendants were part of that conspiracy, the Court denies Mr. Patel's motion.

**IT IS THEREFORE ORDERED** that the Government's Motion to Admit Co-Conspirator Statements **(Doc. 134)** is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Mr. Patel's Motion for Limitation of Alleged Co-conspirator Statements and for Pretrial Hearing **(Doc. 151)** is **DENIED IN PART.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE