IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNATHAN CRAFT, et al.<br><br>Defendant. | Case No. **19-cr-1631-DHU** |

**DEFENDANT JOHNATHAN CRAFT'S MOTION FOR
DISCLOSURE OF GRAND JURY AND PETIT JURY DATA
AND PROTECTIVE ORDER PURSUANT TO 28 U.S.C. § 1867(f)**

Johnathan Craft, by and through counsel of record, Meredith Baker, Law Office of Meredith Baker and Barrett G. Porter, Burgess & Porter Law, hereby respectfully moves the Court pursuant to 28 U.S.C. § 1867, the Fifth & Sixth Amendments to the United States Constitution, and the doctrine announced in *Duren v. Missouri*, 439 U.S. 357 (1979), to order the District Court Clerk for the District of New Mexico to make available to the defense for inspection and photocopying all relevant data and procedures used in the selection of grand and petit jurors in the Northern Division of the District of New Mexico.

Defendant further requests that the court issue a protective order prohibiting the parties from disclosure of any personal juror information to anyone not involved in the litigation of the jury challenges in this case. 28 U.S.C. §1867(f) and Fed. R. Crim. P. 16(d)(1).

The Government takes no position on this discovery request and doe not oppose the request for protective order language. Counsel for co-defendant Patel joins this motion. Counsel for co-defendant Kamal Bhula takes no position.

In support of this Motion, Mr. Craft respectfully submits the following:

## I.     PROCEDURAL BACKGROUND

1.     On June 12, 2019, a federal Grand Jury Indicted Mr. Craft along with several other individuals with ten criminal offenses comprising: Count 1: Conspiracy to Commit Sex Trafficking, Counts 2-4: Sex Trafficking by Means of Force, Count 5: Benefitting Financially from Sex Trafficking, Count 6: Racketeering in Violation of the Travel Act, Count 7: Conspiracy pursuant to U.S.C. § 846, Count 8: Maintaining a Drug-Involved Premise, Count 9: Maintaining a Drug-Involved Premise within 1,000ft of a school, Count 10: Conspiracy to Commit Money Laundering.

2.     On November 5, 2019, another Grand Jury returned a superseding indictment that included two additional co-defendants but did not change the charges against Mr. Craft.

3.     On April 24, 2023, the Court commenced a jury trial for Mr. Craft and his co-defendant Pragneshkumar Patel.

4.     A jury venire of 84 people was selected by the Court Clerk's jury division personnel.

5.     When the jury venire of 84 prospective jurors was seated in the courtroom for voir dire, defense counsel observed that the panel of 84 prospective jurors did not contain any apparent African American individuals.

6.     Given that Mr. Craft is African American, defense counsel for both Mr. Craft and Mr. Patel moved to strike the panel for not representing a fair cross-section of the community.  The African American community in New Mexico according to U.S. Census bureau data comprises approximately 2.7 percent of the whole state population.

7. After inquiry with the Court Clerk's jury division personnel, the Court learned that several of the last jury venires generated by the jury division likewise failed to have **any** African American representation.

8. Defense counsel argued again to strike the current venire and requested the opportunity to have an evidentiary hearing regarding the jury venire selection process and whether the process is generating a fair cross-section of the community.

9. The Court granted the oral motion and vacated the trial.

10. Defense counsel now seeks discovery to assess the current jury selection process for providing a fair cross-section of the community.

## II. GOVERNING LAW AND ARGUMENT

### A. Constitutional and statutory requirements for jury selection.

A defendant in a criminal case has a constitutional and statutory right to a grand and petit jury chosen without discrimination from a fair and representative cross section of the community. *Glasser v. United States*, 315 U.S. 60, 85-86 (1942), *superseded on other grounds by statute, as recognized by Bourjaily v. United States*, 483 U.S. 171 (1987); *Smith v. Texas*, 311 U.S. 128, 130 (1940). "The selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). In addition, discrimination in the selection of a grand or petit jury panel violates a defendant's constitutional right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution. *Batson v. Kentucky*, 46 U.S. 79 (1986).

For these reasons, a defendant has a constitutional right to challenge the exclusion from both the grand jury and petit jury pool of any identifiable group in the community. *Campbell v. Louisiana*, 523 U.S. 392, 397-400 (1998). A defendant may also challenge the exclusion or underrepresentation of any identifiable group from the position of grand jury foreperson. *id.*

Under standards established by the Sixth Amendment of the federal constitution and the Jury Selection and Service Act (JSSA), grand juries that determine whether to charge an individual and petit juries that decide the guilt or innocence of that person must be selected "at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

Section 1861 also safeguards the right of all qualified citizens to be considered for service on grand and petit juries in the Federal district courts. See 28 U.S.C. § 1861 ("It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.").

This provision incorporates the standards of the Equal Protection Clause of the Fifth Amendment, which protects the rights of potential jurors who may have been excluded because of their membership in a "recognizable, distinct class" capable of being "singled out for different treatment under the laws." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). The standard for considering a Fifth Amendment challenge has been described as:

> Traditionally, in order to establish a prima facie case that a jury was selected in violation of a defendant's right to equal

> protection, the defendant is required to met a three-part test established by the Supreme Court in *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). "First, he must establish that the group excluded from the grand jury is one that is a recognizable, distinct class capable of being singled out for different treatment under the laws. Second, he must establish that the selection procedure used by the state to select grand juries is susceptible to abuse or is not racially neutral. Finally, he must establish the degree of underrepresentation occurring over a significant period of time by comparing the proportion of the excluded group in the total population to the proportion serving as grand jurors." *Jefferson v. Morgan*, 962 F.2d 1185, 1189-89 (6th Cir.) (citations omitted), *cert. denied*, 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). "Once [a defendant] has established a prima facie case, the burden shifts to the state to rebut the inference of intentional discrimination." *Id*. at 1189 (citing *Castaneda*, 430 U.S. at 495, 97 S.Ct. at 1280-81).

*United States v. Orvalle*, 136 F.3d 1092, 1104 (6th Cir. 1998).

Furthermore, the JSSA prohibits discrimination and exclusion of any citizen on account of race, color, religion, sex, national origin, or economic status. 28 U.S.C. § 1862.

To demonstrate a violation of the fair cross section requirement, Mr. Craft must show that a race, class, or other identifiable group was excluded in the jury selection process. The legal test is whether a defendant can demonstrate that (1) the excluded group was a distinctive group; (2) the representation of the group in jury venires was not reasonable in relation to the total number of such persons in the community; and (3) the deficient representation was due to a systematic exclusion of the group in the jury selection process. *See Duren v. Missouri*, 439 U.S. 357 (1979). The first showing is, in most cases, easily made; the second and third are more likely to generate controversy. *Berghuis v. Smith*, 559 U.S. 314, 319, (2010).

B. **Entitlement to discovery of jury data**

Mr. Craft's exercise of his right to bring a jury challenge depends on his ability to discover the information necessary to determine whether prospective jurors are being improperly excluded, and whether the method of jury selection violates the policy objectives of 28 U.S.C. 1861 et.seq.

For this reason, the United States Supreme Court held, in *Test v. United States*, 420 U.S. 28 (1975) (per curiam), that the defendant had been improperly denied the right to inspect the jury list in order to prepare a jury challenge pursuant to the Jury Selection and Service Act of 1968. The Court explained that … without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, an unqualified right to inspection is required not only by the plain text of the statute, but also by the statutes overall purpose of insuring "grand and petit juries selected at random from a fair cross section of the community." 28 U.S.C. § 1861. *Id.* at 30.

28 U.S.C. § 1867 sets forth the procedure for challenging compliance with the Jury Selection and Service Act. Section 1867(a) requires the defense to exercise due diligence in investigating possible grounds for such a challenge. Under subsection (f), "[t]he parties in a case shall be allowed to inspect, reproduce, and copy" records or papers used in connection with the jury selection process. Under this provision, "[t]he right to inspect jury lists is essentially unqualified." *U.S. v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986) (citing *Test,* 420 U.S. at 30); *United States v. Armstrong*, 621 F.2d 951, 955 (9th Cir. 1980). *Armstrong* acknowledges that the "right to inspect, produce, and copy such records

6

or papers at all reasonable times" when preparing for jury challenge extends not only to qualified jurors, "but also to the master wheel." *Id.*

Mr. Craft requests that counsel be provided access to all materials related to the master jury wheels and qualified jury lists from 2019 to 2023. This will include the master jury wheel from which his grand jury was selected, as well as master jury wheels and qualified jury list generated and utilized by the Court through his jury trial.

To conduct the necessary analysis for a challenge under prongs two and three of the *Duren* test, Mr. Craft must be provided access to the information concerning the individuals who qualified for jury service, including information addressing how these individuals were qualified and/or excluded from jury service. Accordingly, Mr. Craft requests disclosure of the following from the Clerk of the Court for both the Northern and Southern Jury Divisions of the federal court:

1. Master Jury Wheels - all information[1] related to the creation of the Court's Master Jury Wheels from 2019 to 2023. This includes four years of records beginning with Mr. Craft's Indictment on November 5, 2019, through the present;

2. Qualified Jury Lists - all information[1] concerning members of all grand and petit jury venires who actually drawn from the master jury wheel from which the grand jury in this case was selected (the grand jury issued its Indictment on November 5, 2019);

3. Qualified Jury Lists - all information[1] concerning members of all grand and petit jury venires who were drawn from the master jury wheel from which the petit jury will be selected in this case (trial is scheduled to begin July 19, 2023);

---

[1] The phrase "all information" refers to all available statistical or demographic information regarding jurors including race, color, ethnicity, gender, religion, sex, national origin, or economic status or any other demographic statistics recorded, compiled, or available by the jury division.

7

4. Qualified Jury List – Actual Appearance - access to all information concerning the rosters of jurors who actually appeared for jury selection during the life of the wheel;

5. No Shows - all information at the Clerk's office regarding jurors summonsed for jury duty who did not appear for jury selection ("no shows");

6. No Show Follow Up Efforts – all information at the Clerk's office regarding prospective jurors who fail to return the Juror Qualification Form, and all available information on efforts made to follow up those prospective jurors pursuant to 28 U.S.C. § 1864(a);

7. Unqualified, Exempted, or Excused - all information concerning the jurors who were deemed unqualified, exempted, or excused from jury service, including the reason for the disqualification, exemption, or excusal; and

8. Statistical Analysis Reports – all statistical analysis reports available for the Master Jury Wheels and Qualified Jury Lists between 2019 and 2023, concerning the race, ethnicity, and gender.

The items listed above are by no means exhaustive but are merely illustrative of the kind of information that Mr. Craft needs in order to assess the lawfulness of jury selection process within the Northern Division of the District of New Mexico.

In making this request, Mr. Craft's counsel assures the Court that counsel will maintain the confidentiality of the materials as required under the District's Jury Selection Plan, federal statutory law, 28 U.S.C. § 1867(f), and a protective order issued pursuant to Fed. R. Crim. P. 16(d)(1).

**C. Conclusion**

WHEREFORE, Defendant Craft requests that the court issue an order providing his legal counsel with all identified jury data information so he may adequately explore the issue of challenging the jury selection as discriminatory under 28 U.S.C. § 1867.

Respectfully Submitted,

BURGESS & PORTER LAW, LLC

/s/  Barrett (Barry) G. Porter
_____

Barrett G. Porter and
Meredith Baker Attorneys for
Defendant Johnathan Craft
Burgess & Porter Law, LLC
400 Gold Avenue, SW Suite 910
Albuquerque, NM 87102
Phone:  505-433-5545  /  Fax: 505-835-3545
Email: bporter@burgessporterlaw.com

I hereby certify that the foregoing Document was served electronically through the CM/ECF system, which caused electronic service of this document upon the assigned AUSA and all other parties in this matter.

 /s/ Barrett (Barry) G.
_____
Porter Barrett G. Porter
Counsel for Defendant