IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**JOHNATHAN CRAFT, et. al,**<br><br>　　　　　　　　　　Defendant. | Case No. **19-cr-1631-DHU** |

**DEFENDANT'S MOTION TO DISMISS**
**COUNTS 11 & 12 BASED UPON VINDICTIVE PROSECUTION**

　　　COMES NOW, Johnathan Craft, through legal counsel, Barrett (Barry) G. Porter and Susan Burgess-Farrell of Burgess & Porter Law, hereby respectfully submits this Motion to Dismiss Counts 11 and 12 Based Upon Vindictive Prosecution.

　　　This request is made pursuant to Mr. Craft's due process and equal protection rights under 5th and 14th Amendments to the United States' Constitution and governing case law.

　　　The Government opposes this request and undersigned counsel requests an evidentiary hearing for this matter.

　　　In support of this Motion, Mr. Craft respectfully submits the following:

## PROCEDURAL BACKGROUND

1. On June 12, 2019, a federal grand jury indicted the defendant with Conspiracy to Commit Sex Trafficking, four counts of Sex Trafficking, a violation of the Travel Act, Conspiracy pursuant to 21 U.S.C. § 846, Maintaining a Drug-Involved Premises, and Maintaining a Drug-Involved Premises within 1,000ft of a school, and Conspiracy to Commit Money Laundering.

2. On June 18, 2019, law enforcement agents from the Department of Homeland Security Investigations, the Drug Enforcement Agency, and local law enforcement conducted a raid and search of the Best Choice Inn motel. The search included searches of guest rooms, the main office, and the manager's apartment.

3. As of June 18, 2019, the government was in possession of all evidence necessary to support the charges in the Indictment, including the newly minted Counts 11 and 12.

4. On November 5, 2019, a grand jury returned a superseding indictment that included two additional co-defendants. Here again, the government remained in possession of all evidence to support the charges in the Indictment.

5. Defendant Johnathan Craft has pled not guilty to all charges set forth against him in the Superseding Indictment and is presumed innocent. Mr. Craft has also remained in the government's continuous custody since June 18, 2019.

6. All of the evidence in this case has been in the government's possession and knowledge since June 18, 2019.

7. Mr. Craft's last trial setting was on April 24, 2023. At that time, all parties were present and ready for trial. The government was ready to proceed with all 10 of the offenses as charged by the grand jury on November 9, 2019.

8. A jury venire of 84 people was selected by the Court Clerk's jury division personnel.

9. When the jury venire of 84 prospective jurors was seated in the courtroom for voir dire, defense counsel observed that the panel of 84 prospective jurors did not contain any apparent African American individuals.

10. After inquiry with the Court Clerk's jury division personnel, the Court learned that several of the last jury venires generated by the jury division likewise failed to have any African American representation.

11. Given that Mr. Craft is African American, defense counsel for both Mr. Craft and Mr. Patel moved to strike the panel for not representing a fair cross-section of the community. The African American community in New Mexico according to U.S. Census bureau data comprises approximately 2.7 percent of the whole state population.

12. Based upon Mr. Craft and Mr. Patel's exercise of their constitutional right to challenge the composition of the jury venire, the Court granted the motion to strike the panel and defense counsel's motion for leave to investigate a potential challenge to the Court's jury selection process. Mr. Craft made the request to strike the April 24, 2023, jury venire based upon his constitutional right to due process of law which includes his

constitutional right to have a jury that is a "fair and representative cross-section" of the community.

13. Upon Mr. Craft's request to strike the panel, the government's counsel objected to Mr. Craft's request and informed the Court and opposing counsel that the government was ready to proceed to trial. Counsel for the government was adamant about being ready to proceed and contesting a delay in the trial.

14. At the time of the April 24, 2023, trial setting the government had extended no plea offer to Mr. Craft and no plea discussions were pending or rejected.

15. The Court reset the trial to July 17, 2023, and informed all parties that there would be no further continuance of the trial. The Court made this finding based upon the adamant argument and representations by AUSA Simms that the government was ready for trial and wanted the trial set as soon as possible.

16. Following the April 24, 2023, trial setting, the court held a status conference on May 1, 2023, to discuss a briefing schedule for the jury challenge.  At the May 1, 2023, hearing, the Court set deadlines for the filing of discovery motions for the jury selection challenge and set a hearing on the potential jury selection challenge.

17. On May 4, 2023, Mr. Craft filed a Motion for Special Jury List.  The motion for a special jury list was filed because it appeared likely that any comprehensive challenge to the federal court's current jury selection process would not be completed by the current trial setting (July 17, 2023).

18. On May 9, 2023, after the passage of three years and 10 months since Mr. Craft was arrested in June of 2019, the government charged two new felony offenses purportedly based on the "same evidence" the government possessed for four years.

19. The new charges against Mr. Craft came about only <u>after</u> he asserted his constitutional due process rights and challenged the ethnic make-up of the jury panel drawn for trial on April 24, 2023. The evidence supporting the new charges in Counts 11 and 12, included an unloaded firearm and approximately 5 grams of heroin.

20. Not only did the government bring up these charges after Mr. Craft asserted a protected constitutional right, but the government also failed to charge any of the other residents at the Best Choice Inn (BCI) with similar offenses even though they engaged in the exact same alleged conduct.

21. Several of the guests at the Best Choice Inn possessed the same or similar illegal substances on June 19, 2019, allegedly possessed by Mr. Craft. Further, several of the residents possessed firearms along with those illegal substances on June 19, 2019. Just by way of example, at the time of the police raid of the Best Choice Inn on June 19, 2019, the investigating agents found:

    a. In his vehicle and in the BCI rooms rented by co-defendant Willie Horton (110,108, 210), five firearms, a large amount of methamphetamine, heroin, cocaine and unprescribed pills.

    b. In the room rented by Larry Woolridge (116), heroin and a loaded firearm.

    c. On the person of Ashley Langston, methamphetamine and in her rented rooms (114,115) crack pipes and loaded crack cocaine pipes.

    d. In the room rented by April Shockley (209), and on her person, agents recovered heroin and methamphetamine.

Other rooms also had illicit drugs in them that were not charged. (See Exhibit A, DEA Report of Investigation BCI Evidence Recovery Report 6-18-19).

22. Here, Mr. Craft is being prosecuted for alleged law violations that several of the Best Choice Inn tenants are even more culpable. Willie Horton, Larry Woolridge, Ashley Langston and April Shockley are all similarly situated individuals, yet none were prosecuted for the offenses now charged against Mr. Craft.

23. The government was in possession of all relevant evidence connected to the allegations the new allegations in counts 11 and 12 on November 5, 2019, when it filed its Superseding Indictment.

## GOVERNING LAW AND ARGUMENT

To succeed in a vindictive prosecution claim, a Defendant has the burden of establishing "either (1) actual vindictiveness, or (2) a reasonable likelihood of vindictiveness which will give rise to a presumption of vindictiveness. *United States v. Wood*, 36 F.3d 945, 947 (10th Cir. 1994), *United States v. Raymer,* 941 F.2d 1031, 1040 (10th Cir.1991).

A defendant is entitled to a presumption of vindictiveness if he or she can show that charges "were filed because [she] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an **appearance of vindictiveness**." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). But proof of actual vindictiveness is not

6

required to trigger the presumption of vindictiveness. The mere appearance of vindictiveness is sufficient to trigger the presumption. *Id (emphasis added).*

> The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindictive prosecution "seeks[s] to reduce or eliminate apprehension on the part of an accused" that she may be punished for exercising her rights. As the district court noted, the "prophylactic" doctrine is designed, in part, "to prevent chilling the exercise of [legal] rights by other defendants who must make their choices under similar circumstances in the future."

*United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007)(citations omitted).

In dismissing the new charges against *Jenkins*, the court stated that because of the late timing of the new charges there was an appearance of vindictiveness. The Court of Appeals affirmed the dismissal:

> The district court found that the prosecutor's conduct created the appearance of vindictive prosecution because the alien smuggling charges were brought only after Jenkins exercised her right to testify in her own defense at her separate marijuana smuggling trial. We affirm. We conclude that, because the government could have prosecuted Jenkins for alien smuggling well before she presented her theory of defense at the marijuana smuggling trial, the timing of the charges created the appearance of vindictiveness.

*United States v. Jenkins*, 504 F.3d 694, 697 (9th Cir. 2007).

*Jenkins* goes on to explain:

> To establish a presumption of vindictiveness, Jenkins need not show "that the prosecutor acted in bad faith" or that he "maliciously sought" the alien smuggling indictment. *United States v. Groves,* 571 F.2d 450, 453 (9th Cir.1978); *see also United States v. Ruesga–Martinez,* 534 F.2d 1367, 1369 (9th Cir.1976) ("We do not intend ... to impugn the actual motives of the United States Attorney's \*700 office in any way.").

7

> Rather, she must demonstrate a *reasonable likelihood* that the government would not have brought the alien smuggling charges had she not elected to testify at her marijuana smuggling trial …

*United States v. Jenkins*, 504 F.3d 694, 699–700 (9th Cir. 2007).

In general, the Court determines whether a realistic or reasonable likelihood of vindictiveness exists by appraising "the totality of the objective circumstances surrounding the prosecutorial decision." *Id.* (quoting *United States v. Contreras*, 108 F.3d 1255, 1263 (10th Cir. 1997)).

The Tenth Circuit views vindictive prosecution claims as mixed questions of law and fact and reviews a district court's resolution of these issues under the clearly erroneous standard. *United States v. Raymer,* 941 F.2d 1031, 1039 n. 4 (10th Cir.1991). Furthermore, upon review the Tenth Circuit considers all of the facts and all inferences therefrom in the light most favorable to the prevailing party below. *United States v. Wood*, 36 F.3d 945, 946 (10th Cir. 1994) (citing *United States v. Preciado,* 966 F.2d 596, 597 (10th Cir.1992)).

In a case very similar to Mr. Craft's case, *United States v. Wood*, the Tenth Circuit upheld the dismissal of new and different charges. Like Mr. Craft, Mr. Wood was punished, vindictively prosecuted, after he exercised his constitutional right to a trial. In Mr. Craft's case, the new and different charges arose after he exercised his constitutional right to challenge the composition of his trial jury panel. The new and different charges against Mr. Craft also arose after he successfully motioned the court for a Special Jury List as permitted in the Court's Master Jury Plan. This Special Jury List motion was also an exercise of Mr. Craft's constitutional right to a fair trial.

8

A defendant in a criminal case has a constitutional and statutory right to a petit (trial) jury chosen without discrimination from a fair and representative cross section of the community. *Glasser v. United States*, 315 U.S. 60, 85-86 (1942), *superseded on other grounds by statute, as recognized by Bourjaily v. United States*, 483 U.S. 171 (1987); *Smith v. Texas*, 311 U.S. 128, 130 (1940). "The selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975).

In addition, discrimination in the selection of a petit jury panel violates a defendant's constitutional right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution. *Batson v. Kentucky*, 46 U.S. 79 (1986).

Only after Mr. Craft exercised his constitutional rights as described above, did the government convene a new grand jury to add two new and different offenses to the list of charges against Mr. Craft. Of note, the new charges also arose after the government expressed its extreme displeasure with Mr. Craft's assertion of his constitutional rights.

In its response to Mr. Craft's motion the government made false claims of "gamesmanship". (U.S. Response Doc. 523 p. 1). The government went to complain about the defendant filing its Motion for Special Jury List and characterized the assertion of Mr. Craft's constitutional rights as "Putting the cart before the horse" "to get their last chance to get the jury they desire" ... "to vindicate a non-existent right" (USA Response Doc 523 p. 2).

Most importantly, the government viewed Mr. Craft's exercise of a constitutional right as asking the Court to "put its thumb on the scale to vindicate a right that does not exist." (U.S. Response Doc. 523, p. 3).

Thus, as apparent from the government's written response and the many indignant representations by the government in court, the government was very upset by Mr. Craft's motion and the Court's ruling. Then, and only then, came additional charges against Mr. Craft. Three years and eight months passed during the life of this case. All of the exact same evidence was in possession of the government since June 18, 2019.

The government may argue that defense counsel's tacit acquiescence that room 112 was occupied by Mr. Craft was the motivator for the new charges, but that is nonsensical. This argument was made by AUSA Simms at the status conference on June 14, 2023. Ms. Simms informed the Court that the reason for bringing the new charges in counts 11 and 12 so late was because she learned that room 112 was occupied by Mr. Craft and that defense counsel was not going to be contesting that fact. She also told the court in that same argument that defense counsel would not stipulate to that fact.

The government wants the Court to believe that only after the April 24th trial setting, it learned that that Best Choice Inn room 112 was a room occupied by Mr. Craft. The truth is the government knew Mr. Craft was the occupant when the room was searched on June 18, 2019, and it was documented as being his room:

> 4. During the search of room 112, which was being occupied by Johnathan CRAFT, Agents located a clear plastic baggie of brown tar like substance (Exhibit 22) located in a backpack. During the search of a

U.S. Discovery Bates No. 01155 (DEA report prepared 7/11/2019).

During our motion in limine hearings, Ms. Simms herself argued to the Court for the admission of several photographs from room 112 because of the identifying documents found in the room. In fact, Ms. Simms argued that she needed the photographs of Mr. Craft's identification, court documents, and child support documents so she could show that room 112 was occupied by Mr. Craft.  The government's attempt to grasp for legitimate reasons for the unusual timing of the new charges is disingenuous and indicative of the true motivation for adding Counts 11 and 12 – vindictiveness.

Even if the government's claim was credible, it is not sufficient to overcome the presumption of vindictiveness. The government tried that same excuse in the *Jenkins* case and it was flatly rejected:

> The government's assertion that its case against Jenkins was much stronger after her in-court admission does not suffice to dispel the appearance of vindictiveness. We therefore conclude that the indictment should be dismissed.

*United States v. Jenkins*, 504 F.3d 694, 697 (9th Cir. 2007).

Furthermore, as the *Wood* case instructs there are several other considerations in this case that weigh in favor of a presumption of vindictiveness:

The considerations set forth by the Tenth Circuit in *Wood* included:

1. <u>Length of delay in adding new charges</u>. There was a four year delay here, twice the delay in *Wood*.

2. <u>Whether charges based on new evidence</u>. There was no new evidence obtained to justify adding new charges.  All of the evidence to justify the new and additional charges was in the government's hands on June 18, 2019.

11

3. <u>Whether new charges not arising from separate event.</u> The new Counts 11 and 12 arose from the same conduct alleged in Count 1 – 10, and indicted in 2019.

4. <u>Whether the charges were split up because of case management or efficiency</u>. The new charges in counts 11 and 12 had nothing to do with making the case more efficient. Indeed, quite the opposite is true here where the government's conduct potentially created the need for a separate new trial.

Here, Mr. Craft is being newly prosecuted for alleged law violations that several of the Best Choice Inn tenants are even more culpable. Willie Horton, Larry Woolridge, Ashley Langston and April Shockley are all similarly situated individuals, yet none were prosecuted for the offenses now charged against Mr. Craft.

Mr. Craft has been singled out for prosecution in Counts 11 and 12 – an extremely untimely prosecution. Furthermore, his prosecution for the charges in the newly minted Counts 11 and 12, came only after he exercised his constitutional right to have a jury comprised of a fair and representative cross-section of the community.

Thus, as in *Wood*, the government's decision to bring new and additional charges against Mr. Craft after he exercised his due process and sixth amendment rights is "inherently suspect" and like the Court in the *Wood* case it is proper and reasonable for the Court to find a likelihood of vindictiveness and employ the presumption of vindictiveness. *United States v. Wood*, 36 F.3d 945, 947 (10th Cir. 1994).

As previously stated, once it is found that a reasonable likelihood of vindictiveness existed, a presumption of vindictiveness arises which the government must overcome by demonstrating legitimate, objective, and articulable reasons for its conduct. *Id*. Borrowing

from a Fifth Circuit case, the Tenth Circuit also held in *Wood* that "a presumption of vindictiveness ... cannot be overcome unless the government proves by a preponderance of the evidence that events occurring since the time of the original charge decision altered [the] initial exercise of the prosecutor's discretion." *Id.* Additionally, "the court must examine the prosecutor's actions in the context of the entire proceedings." *United States v. Wood*, 36 F.3d 945, 946–47 (10th Cir. 1994).

In another important and similar vindictiveness case, *United States v. Jenkins*, 804 F.3d 694 (9th Cir 2007), the Ninth Circuit Court of Appeals affirmed the dismissal of new charges against a defendant who was punished for exercising her constitutional right to testify. In *Jenkins* a new and different charge was brought against the defendant during trial, while the jury was deliberating. The *Jenkins'* court first found an appearance of vindictiveness because of the suspect timing of the new charge, thus triggering the presumption of vindictiveness. The court then looked to the government's justification for the untimely new charge; that new evidence had strengthened the government's allegation for the new charge. The *Jenkins*' court found the government's strengthening claim did not dispel the taint of vindictiveness.

Here, the government's own words, actions, and timing in this case indicate a strong distaste for Mr. Craft exercising his constitutional rights to challenge the composition of his petit and grand juries. Unfortunately, it follows that if the government doesn't want other defendants exercising their constitutional rights and perhaps changing the make-up and complexion of jury panels, it makes sense to punish people who wish to have their

constitutional rights honored.  That is exactly the conduct and chilling effect, however, for which the doctrine of vindictive prosecution arose.

The doctrine of vindictive prosecution squarely applies to this case and the only proper remedy is dismissal of counts 11 and 12.

WHEREFORE, given that the prosecution has used its prosecutorial authority in an unequal, impermissible and vindictive manner, counts 11 and 12 of the superseding indictment should be dismissed.

Respectfully Submitted,
BURGESS & PORTER LAW, LLC

*/s/  Barrett (Barry) G. Porter*
_____
Barrett G. Porter & Susan Burgess-Farrell
Attorney for Defendant
Burgess & Porter Law, LLC
400 Gold Avenue, SW Suite 910
Albuquerque, NM 87102
Phone:  505-433-5545  Fax: 505-835-3545
Email: bporter@burgessporterlaw.com

I hereby certify that the foregoing Document was served electronically through the CM/ECF system, which caused electronic service of this document upon the assigned AUSA and all other parties in this matter.

 /s/ Barrett (Barry) G. Porter
_____
Barrett G. Porter
Counsel for Defendant Johnathan Craft